Howard L. Williams
CA State Bar Number: #207242
910 Court St,
Martinez, CA 94553-1731
925-257-2946
howardwilliams@icloud.com

Attorney for Plaintiff
Guida Dennis

# UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| Guida Dennis, | Case No. _____ |
| Plaintiff, | COMPLAINT FOR DAMAGES, REQUEST FOR INJUNCTION AND DECLARATORY RELIEF; |
| vs. | CAUSES OF ACTION: |
| Tulare City School District, County of Tulare Jennifer Marroquin, Ira Porchia, Phillip Pierschbacher, Cherry Ave Middle School, & Does 1-100 | VIOLATIONS OF CONSTITUTIONAL RIGHTS, AMENDMENTS I, IV, V, IV |
| | VIOLATIONS OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT [CAL CIV C § 56 ET SEQ.] |
| Defendants, | DEMAND FOR JURY TRIAL |

***COMPLAINT FOR DAMAGES, REQUEST FOR INJUNCTION & DEMAND FOR A***

***JURY TRIAL***

## I. <u>JURISDICTION & VENUE</u>

1. This court has jurisdictional authority to hear this case under 28 U.S.C. § 1331, which

confers original jurisdiction on federal district courts to hear suits arising under the laws and

Constitution of the United States.

2. This Court has jurisdiction over the claims asserting violations of the laws and Constitution of the State of California through its supplemental jurisdiction under 28 U.S.C. § 1367(a), as those claims are so closely related to the Plaintiffs' federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a), and attorneys' fees and costs under 42 U.S.C. § 1988.

4. The Eastern District of California, Fresno Division is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and (2) because it is the district in which Defendants reside, exercise their authority in their official capacities, and/or have threatened to deprive Plaintiffs of the rights and liberties under the laws and Constitution of the United States, and, in addition thereto, to violate the laws and Constitution of the State of California, as further alleged herein. It is also the district in which a substantial part of the events giving rise to Plaintiffs' claims have occurred and continue to occur.

## II. **PARTIES**

5. The plaintiff, Guida Maria Dennis, is an adult resident of Tulare County, State of California, and the United States of America.

6. The true names of defendants Does 1-100, inclusive, are now unknown to plaintiff who therefore sues each said defendant by such fictitious name; but upon ascertaining the true name of Doe defendant, plaintiff will amend his complaint or seek leave so to do, to insert same in lieu of such fictitious name.

7. Defendant Jennifer Marroquin's job title is "COVID-19 Learning Loss Mitigation/Early Childhood Director" for the Tulare City School District.

8. Defendant, Ira Porchia's job title is "Director of Child Safety" for the Tulare City School District.

**9.** Defendant, Philip Pierschbacher's job title is "Assistant Superintendent of Personnel" for the Tulare City School District.

**10.** At all times herein mentioned, defendant Jennifer Marroquin was and is a public employee.

**11.** At all times herein mentioned the defendant Philip Pierschbacher was and is a public employee.

**12.** At all times herein mentioned the defendant Cherry Ave Middle School was and is a public entity, whose organization is unknown.

**13.** At all times herein mentioned the defendant Tulare City School District was and is a public entity, whose organization is unknown.

**14.** At all times herein mentioned the defendant Tulare County was and is a public entity, whose organization is unknown.

**15.** At all times herein mentioned, all defendants, and Does 1-100, inclusive, were each duly appointed, qualified and acting for and by said named defendants, the County of Tulare or the State of California or the Federal Government of the United States.

**16.** At all times herein mentioned each said defendant was acting within the course and scope of such employment and under color of law.

**17.** At all times herein mentioned, plaintiff is informed and believes and based thereon alleges that all defendants were operating under the auspices of the County of Tulare, and at all times herein mentioned each said named and Doe defendant was acting within the course and scope of their employment and under color of state law.

**18.** At all times mentioned, each defendant is a natural person except Cherry Ave Middle School, Tulare City School District, County of Tulare, and/or a business organizational and portion of government; form unknown.

**19.** The plaintiff alleges that all times mentioned, each defendant was the agent, servant, and employee of each of the co-defendants, and with the knowledge and consent of, and at the direction and with the approval of said defendants and each of them acted on their behalf.

**20.** That based on this employee/employer relationship between the defendants, each of them are vicariously liable for the acts of each other.

**III.  STATEMENT OF FACTS**

The following is a preliminary summary of the relevant facts of this case, all of which are true to the best of the plaintiff's knowledge and are provable by eyewitness testimony, documents, and any and all other forms of corroborating relevant evidence. The individuals named in the statement of facts are by no means the entire scope of parties involved, nor should statement of facts be construed to limit the evidence which plaintiff has available to present upon discovery request or at trial. Rather, this statement of facts serves as notice to the named and unnamed defendants of plaintiff's lawsuit and is separate from the individual facts specific to each claim so as to provide a baseline of all necessary and relevant facts in order for this complaint to meet all of the procedural requirements law under the Federal Rules of Civil Procedure.

The Plaintiff is asking the Court to construe all factual assertions throughout the complaint as correct and factually true, as they have been extensively researched by counsel along with various experts in their fields.  Plaintiff respectfully asks the Court to take notice that nothing in the "statement of facts" section should be used to limit the scope or addition of facts pleaded in other portions of this Complaint.   Finally, the Plaintiff asks the Court to construe all pleaded factual assertions together and as true when the Court is attempting to determine whether or not this Complaint has pled sufficient facts necessary to prove each claim at the time of filing and service of this Complaint.

21. Plaintiff is currently employed as a Bilingual Aide with Cherry Ave Middle School.

22. Cherry Ave Middle School is located at 540 N Cherry St, Tulare, CA 93274 and is a part of the Tulare City Unified School District.

23. The Tulare City Unified School District is governed by their local board of supervisors, which in turn is governed by the Tulare County Unified School District.

24. In response to the Federal and State Vaccination mandates for certain categories and classifications of workers, the County of Tulare Board of Supervisors began to discuss and weigh the costs and considerations of voting on a resolution to implement a form of "COVID-19 Vaccination Mandate" on the population of the County of Tulare.

25. On July 20, 2021, the County of Tulare Board of Supervisors passed resolution No. 2021-0591, entitled Resolution "Supporting Delegation of Authority For School Covid-19 Safety Protocol to Local School Boards."

26. The effect of Resolution 2021-0591, was to delegate the regulatory authority to the various local school boards within the County of Tulare to decide whether or not to create policies mandating vaccinations/proof of vaccinations.

27. On August 10, 2021, Tulare City School District held a board meeting suggesting adopting a resolution "supporting the delegation of authority for School COVID-19 safety protocol to local school boards,"  a title identical, at that point, to the County Board's resolution.

28. The resolution in ¶ 27 was tabled to be voted on until September 14, 2021, so that the parties could consult with legal counsel and determine how to draft a TCSD School policy.

29.  Both defendants Marroquin and Pierschbacher were in attendance at the August 10 meeting.

30. On August 23, 2021, Plaintiff was contacted via email chain from the Tulare County School District Weekly update.

31. The email contained a link to the following website, https://www.smore.com/uks8p-tcsd-weekly-update?ref=email and the language of the email stated the following: "Vaccine Verification and Staff Testing - Attached you will find the TCSD Vaccine Verification and Staff Testing Timeline that addresses the recent public order issued by the Governor on August 11, 2021."

32. The website referenced in ¶ 31 contained an additional link https://docs.google.com/presentation/d/15d2dWV1HECv1DmbiCODBirUwDUOHua3Yf5WaUnvh9to/edit?usp=sharing to a private drive with the policy of the Tulare City Schools regarding staff vaccination and verification policies.

33. The documents on the website referenced above contained a policy explanation, stating: "Background: On August 11, 2021, Governor Newsom issued an order, effective August 12, 2021, that requires all schools (public and private schools serving students in TK-12) must verify vaccination status of all workers.  Workers who are not fully vaccinated will be

1  required to undergo diagnostic testing at least once weekly.  Full compliance with the Order

2  is required by October 15, 2021."

3  34. Another document attached to the website was in the form of a policy summary, depicting a

4  timeline of the rollout of this policy, stating that "vaccination verification" would begin on

5  on September 10, 2021 for all TCSD staff and an October 15, 2021 deadline for "Staff

6  Testing."

7  35. The "Staff Testing" portion of the policy document stated, "TCSD is working to finalize

8  procedures for testing unvaccinated individuals beginning October 15, 2021. … TCSD will

9  cover the costs associated with staff testing and work to arrange testing be conducted during

10  contractual time."

11  36. No written notice of the procedures that would be used to implement the policies referenced

12  above was provided to Plaintiff or the public.

13  37. On September 14, 2021, Tulare City School District voted on and adopted Resolution No.

14  2021/2022-09, entitled  "Supporting Local Decision Making Authority in Establishing

15  COVID-19 School Safety Protocols."

16  38. Both defendants Pierschbacher and Marroquin were present at the September 14 board

17  meeting.

18  39. The text of Resolution No. 2021/2022-09[1] reads: "WHEREAS, the California Department of

19  Public Health ("CDPH") has publicly recognized that all students must have access to safe

20  and full in-person instruction and to as much instructional time as possible; WHEREAS, the

21  CDPH (in collaboration with the CDC and the American Academy of Pediatrics) has

22  developed COVID-19 Public Health Guidance for K-12 Schools in California, 2021-22

23  School Year, which provides for standard safety protocols across the state, including

24  requiring K-12 students and staff to wear masks indoors, with exemptions per CDPH face

25  mask guidance; WHEREAS, the District Board of Trustees ("Board") is committed to

26  following the guidance and requirements of public health officials in developing COVID-19

27

28  [1] The minutes from the TCSD school board meetings are accompanied by packets of documents; containing items such as resolutions passed and the evidence used to based those resolutions and are public available at https:// www.tcsdk8.org/apps/pages/index.jsp?uREC_ID=1101492&type=d&pREC_ID=1386764 .

*Complaint for Damages*                                    6                                    *Prayer for Relief*

school safety protocols; and WHEREAS, the Board believes that local school districts and their governing bodies should make the final determination regarding appropriate COVID-19 school safety protocols in consultation with the local public health officer. NOW THEREFORE, BE IT RESOLVED as follows: The Board requests that CDPH and other applicable state officials: a. Provide flexibility to allow school districts, in consultation with the local public health officials, to determine COVID-19 school safety protocols. b. Take into account local conditions (in addition to understanding conditions statewide and nationally) when developing COVID-19 safety protocols for schools. The foregoing Resolution was passed and adopted by the Board of Trustees of the Tulare City School District of Tulare County, California, at a regular meeting of the Board of Trustees held on September 14, 2021 by the following vote" and left space for the vote tally.

40. On September 23, 2021, Jennifer Marroquin contacted Plaintiff asking for Plaintiff to complete "the vaccination verification form."

41. The email stated "Good Afternoon, Our records indicate that as of September 22, 2021, we have not yet received your Vaccination Verification Form. You will either check, 1) I have not received the COVID-19 Vaccine or 2) I have received the complete series of the COVID-19 vaccinations and upload vaccination verification."   The email included a link to a portal where she could enter this information.

42. On September 24, 2021, Plaintiff informed Ms. Marroquin that she was going to be submitting a religious exemption to the policy and refused to disclose her medical history.

43. On September 28, 2021, the Tulare City School District school board voted on and adopted a Memorandum of Understanding (MOU) between TCTA and TCSD, 2021/2022— Independent Study; Testing of Unvaccinated Staff which based on comments recorded in the minutes; appear to be the implementation of testing employees weekly or bi-weekly for COVID-19.

44. The final board packet, published on the school board website, https://www.tcsdk8.org/apps/pages/index.jsp?uREC_ID=1101492&type=d&pREC_ID=1386764 contained the MOU policy on page 27.

45. The text of the MOU as it relates to COVID-19 reads as follows: "Independent study/ Substitution/COVID Stipend: School nurses will assist with COVID tracing, and will use the 30 minutes extra time daily to do so.  School nurses will no longer submit timesheets for extra tracing. Unvaccinated staff, as well as those who have not submitted their vaccine verification form, will report to weekly COVID testing at the arranged schedule with no additional compensation."

46. That MOU referenced in ¶ 47 was signed by Jennifer Marroquin, Philip Pierschbacher and Brian Hollingshead.

47. On October 12, 2021, Plaintiff met with Ira Porchia in-person and was told "if [Plaintiff] didn't comply with the new policy and disclosed her medical history regarding COVID-19, she would be placed on administrative leave and then eventually terminated."

48. On October 20, 2021 Plaintiff presented a letter for religious exemption to Mr. Pierschbacher from her pastor and a letter from herself.

49. On October 20, 2021, Plaintiff received a letter from Mr. Pierschbacher, stating, "The state is requiring all school districts to test employees who are not vaccinated for COVID-19 or refuse to state their status.  I explained to you that you do not have a choice whether or not to test.  If you choose not to test … [you will go] on unpaid leave (after using all available leave-personal necessity, vacation and/or comp time)."

50. On October 22, 2021 Plaintiff informed Mr. Pierschbacher in a letter the following: "October 22, 2021  Mr. Philip Pierschbacher, I apologize for not getting to your letter yesterday, but I was very busy and didn't have the time required to respond to such a sensitive matter. After reading your letter it is my understanding that Tulare City School District's position on this matter is to deny the Constitutional rights of its employees to religious exemptions from medical procedures (testing). I also understand your admitting to violating your own non-discrimination and Equal Opportunity policy. https:// drive.google.com/file/d/1vkLHeALSNNMRy68mgMGGTi-8xGnpG4Kd/view  https:// www.tcsdk8.org/apps/pages/index.jspuREC_ID=1105475&type=d&pREC_ID=1387155 "This organization is an Equal Opportunity Employer and does not discriminate on the basis

race, color, ancestry, nationality, national origin , immigration status, ethnic group identification, ethnicity, age, religion, marital status, pregnancy, pregnancy status, physical or mental disability, sex, sexual orientation, gender, gender identity, gender expression, or genetic information; a perception of one or more of such characteristics; or association with a person or group with one or more of these actual or perceived characteristics. Inquiries regarding compliance procedures may be directed to our personnel office. This organization is a Drug, Alcohol and Tobacco-Free Workplace." If you are only denying my rights, please cite the exact undue hardship that would be caused or the code of law to substantiate your decision. I also understand that if I refuse to violate my religious beliefs regarding testing, I will immediately be placed on unpaid leave after exhausting my own sick leave pay.  In addition, to what I wrote in my letter invoking my religious exemption I want to add that participating in a medical experiment, such as covid testing is a violation of my religious beliefs. Covid tests have an emergency authorization by the FDA, not an approval. To date there are no COVID-19 diagnostic tests beings used that have completed a full FDA approval process. The reason they have not received FDA approval is because the safety and effectiveness of the product has not been proven. Refer to the FDA website explaining the EUA process. Therefore, these are experimental treatments, and I have the right to refuse consent – without being discriminated, retaliated, or harassed against.  The manufacturers fact sheet for health care providers, for the CovAbScreen SARS-Cov-2 Antibody Test (the test the district is requiring, although the promise was a spit saliva test) states the following on their website: What is an EUA? The United States FDA has made these tests available under an emergency access mechanism called an Emergency Use Authorization (EUA). https://covabscreen.com/wp-content/uploads/2021/01/LN-6123-Fact-Sheet-for-Healthcare-Providers-CovAbScreen-Rev-B.pdf  In our previous discussions regarding this matter, you have indicated to that the district is open to ideas for satisfying my right to a religious exemption. Does TCSD have a remote position that I could be reclassified into? Although, I have been working directly with children, I am well qualified in many other areas. If no such position exists or is available, then please let me know what your appeal process is.  In

closing, I will not dishonor God and I stand by my original statement to TCSD and I am exercising my constitutional civil right to honor my beliefs and religion. I have provided you with my religious statement as will as a letter from my pastor. I have submitted myself to all of the district's questions. This process has been extremely stressful to me and my family. I never thought living in the United States, I would ever be asked to violate my sincerely held religious beliefs. I followed the letter of the law with regards to title VII of our civil rights and continue to ask that you do the same, Respectfully, Guida Dennis"

## IV. CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF: VIOLATIONS OF
### THE FIRST AMENDMENT

**A.  Basis for Jurisdiction**

51. Article III, Section 2 of the U.S. Constitution provides that federal judicial power shall extend to all cases "arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." That constitutional provision authorizes Congress to give federal courts such jurisdiction. Today, the congressional grant of federal question jurisdiction is codified at 28 U.S.C. § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

52. For the purposes of this lawsuit, the Plaintiff is alleging that the County of Tulare and its agents violated her constitutional rights.

53. Specifically, the County of Tulare Board of Supervisor's Resolution No. 2021-0591, delegated the authority to each local school board to pass what they call COVID-19 Safety Protocols.

54. The delegation of this authority gave the Tulare City School District and its various agents, the ability to pass the policies which infringe upon the Plaintiff's free exercise of her religion.

55. The Tulare City School Districts implementation of Policy 2021/2022-09 was used to enact a vaccination registry of all TCSD employees and set the stage to implement the testing of non-vaccinated people based on the policy passed on September 28, 2021.

56. It appears that both of the named defendants Marroquin and Pierschbacher were involved in the creation of these policies since they were present at every board meeting and signed off on approval of the testing policy.

57. Based on the facts according to Plaintiff's knowledge, Mr. Pierschbacher appeared to have sole discretion over whether or not Plaintiff would be granted a religious exemption.

58. Several of the districts agents mades comments showing preference to "non-religious" people and not respecting the beliefs of plaintiff's religion.

59. Therefore, Plaintiff has standing to bring this case in federal court because it arises directly from a constitutional protection in the bill of rights and Federal Code 28 U.S.C. § 1331.

**B. Facts in Support of This Claim**

60. Each of the defendants are state actors, since they are members of the local government of County of Tulare in the state of California, and as such the policies they enact cannot violate the United States Constitution.

61. Marroquin and Pierschbacher represented themselves as under the color of law, as both of them had significant participation in executing and implementing the TCSD unified school district policy relating to COVID-19 "safety protocols".

*1. Free Exercise Challenge*

62. The TCSD policy requires that all employees, "Submit a COVID-19 proof of vaccination form" showing proof of injection from either Pfizer, Johnson and Johnson or Moderna. All of these treatments relied on fetal cells to create the injections, with Pfizer and Moderna relying on a fetal-derived cells in testing, and Johnson and Johnson using current fetal cells in production.[2] [3]

63. TCSD policy[4] for staff who fails to comply or refuses to disclose medical history will be subject to unpaid testing on a weekly basis or placed on unpaid leave and terminated.

64. An additional policy of TCSD's agents, is to cite in their policies and resolutions the Public Health Guidelines and Mandates from the State of California and the Center for Disease Control.

65. In their communication with the Plaintiff, TCSD's agents stated they are implementing the State of California COVID-19 mandates for the district employees under their control.

66. By citing and punishing Plaintiff for non-compliance with the State Public Health Order, TCSD is, in effect, applying State and federal public health guidelines as their own independent regulations.

67. The policies passed by TCSD effectively requires a breach of Plaintiff's bodily integrity; whether it is shot or swab, despite it specifically conflicting with her Christian beliefs.

68. Although on its face, the policy doesn't appear to provide exemptions, Plaintiff nonetheless submitted a religious objection.

_____

[2] See, e.g. https://www.nationalgeographic.com/science/article/here-are-the-facts-about-fetal-cell-lines-and-covid-19-vaccines; See also, e.g., https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8205255/

[3] According to Supreme Court Justice Neil Gorsuch in his dissent from denial of Injunctive relief in the case John Does 1-3, et al. v. Janet T. Mils, Governor of Maine, et al. 595 U.S._2021 No. 21-A90 wherein frontline healthcare workers challenged Maine's vaccination mandate on free exercise grounds by alleging that the 'big three' Covid vaccines were derived in part from fetal cells, "Maine does not dispute that its rule burdens the exercise of sincerely held religious beliefs. The applicants explain that receiving the COVID–19 vaccines violates their faith because of what they view as an impermissible connection between the vaccines and the cell lines of aborted fetuses. More specifically, they allege that the Johnson & Johnson vaccine required the use of abortion-related materials in its production, and that Moderna and Pfizer relied on aborted fetal cell lines to develop their vaccines. Complaint ¶¶61– 68. This much, the applicants say, violates foundational principles of their religious faith. For purposes of these proceedings, Maine has contested none of this."

[4] See September 28, 2021 MOU Order

*Complaint for Damages*                    12                    *Prayer for Relief*

69. As stated extensively above in her eloquently worded letter to Mr. Pierschbacher, Plaintiff has an objection to testing and vaccination disclosures based on her beliefs as a religious woman.

70. Plaintiff's religious beliefs prevent her from injecting into her body a medical treatment derived from aborted fetal-derived cells in testing and/or production.

71. Plaintiff informed the named defendants in writing, as well in her meetings with Porchia, Pierschbacher and Marroquin, that she objects to this policy because she holds religious beliefs and values that preclude injection of treatments derived from fetal cells.

72. Based on her religious exemption denial, Plaintiff is arguing that the regulations set forth by TCSD regarding its COVID-19 policies are targeted and not of neutral applicability.

73. Facts that support the implementation of the policy being targeted as it applies to her include Marroquin passing judgment upon the sincerity and validity of the Plaintiff's religious beliefs, going so far as to deny their validity.

74. Philip Pierschbacher informed Plaintiff that her religious objection to testing is not valid and he denied her religious documentation without providing a reason or policy supporting his denial.

75. The letter Pierschbacher sent plaintiff after he received her religious objections letters stated simply, "If your religious beliefs prevent you from complying with our policy, you will be disciplined".

### 2. Establishment Clause Violation

76. The First Amendment provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."

77. As stated above, TCSD and its agents have in many instances, passed judgment on the religious beliefs of Plaintiff and ignore the legitimate concerns with scientific experimentation.

78. By mandating the injection of fetal-derived cell lines into employees of TCSD, the government is effectively favoring "non-religion" over religion.

**C. Relief Sought**

79. Plaintiff is alleging that she suffered "actual injury" caused by the defendants and their agents.  The forms of injury Plaintiff has suffered include lost wages and threat of removal from the position in which she has worked tirelessly throughout the pandemic and before. Some examples include lost salary, medical and health benefits, pensions, retirement and civil service benefits.

80. For this count, the relief Plaintiff asks the court to grant any and all relief it deems appropriate and specifically asks the court to issue a Temporary Restraining Order preventing TCSD from terminating or disallowing her to work.

81. Plaintiff also asks the court to grant a Preliminary and Permanent Injunction, staying the implementation of TCSD's Policy as it applies to the Plaintiff and other workers in the schools of Tulare City.

82. Furthermore, Plaintiff seeks a Declaratory Judgment from the Court stating that the policy of TCSD is unconstitutional because it violates both the Free Exercise and Establishment Clauses of First Amendment of the Constitution.

83. The Plaintiff seeks restitution for the losses she sustained because of this policy, attorneys' fees and litigation expenses.

84. Should the court find the above relief inappropriate, Plaintiff demands a jury trial on the issue of damages and seek all forms of compensatory damages, punitive damages, attorneys' fees, and litigation expenses from each of the defendants.

## SECOND CLAIM FOR RELIEF: VIOLATIONS OF THE FOURTH AMENDMENT

**A.  Basis for Jurisdiction**

85. For the purposes of this lawsuit, the Plaintiff are alleging that the Tulare County and its agents violated her Constitutional Rights under the Fourth Amendment of the United States Constitution.

86. Specifically, TCSD's policy requires either that Plaintiff receive a novel medical treatment using messenger-RNA administered via injection with a syringe, or that Plaintiff submit to a weekly Covid test administered via nasal or oral swab.

87. At no time relevant herein has Plaintiff been under criminal suspicion nor have any warrants been reviewed or issued by a magistrate after a finding of probable cause, nor do any other "special facts" exist such that would subject her to the 'invasion of bodily integrity' that the County mandate requires. See <u>Missouri v. McNeely</u> 569 U.S. 141 at 148 , <u>citing</u> <u>Winston v. Lee</u> (1985) 470 U.S. 753, 760.

88. As such, the County of Tulare through its agents is infringing upon the Plaintiff's right to be secure in her person from unreasonable searches and seizures. Therefore, Plaintiff has standing to bring this case in federal court because it arises directly from a constitutional provision and Federal Code 28 U.S.C. § 1331.

89. Therefore, this specific count is based on a case or controversy under the US Constitution, making federal court jurisdiction proper.

### B. Facts in Support of Claim

90. Under the TCSD staff testing policy from September 28, 2021, which gained its authority via delegation by the County of Tulare, Plaintiff, and other TCSD employees must either undergo injection or, are required to submit to PCR testing.

91. The injection option requires penetration of the skin with a syringe, and a PCR test requires the insertion of a swab into the nose of a party.

92. Plaintiff has objected to submission of both the injection and the test and has been threatened with termination or placed on unpaid suspension for it.

93. No warrant has or ever was presented to a neutral magistrate nor was there ever a showing made by the government that they had probable cause to believe that Plaitntiff committed a crime.

94. Instead, as legal support for their policy, TCSD cited the County Board of Supervisors regulation which give them the ability to conduct these intrusions into Plaintiff's bodily integrity for purposes of the injection or PCR information.

**C. Relief Sought**

95. Plaintiff is alleging that she suffered "actual injury" caused by the defendants and their agents.  The forms of injury Plaintiff has suffered include lost wages and removal from the positions where they worked tireless throughout the pandemic and before.  Some examples include lost salary, medical and health benefits, pensions, retirement and civil service benefits.

96. For this count, Plaintiff is seeking relief in equity from the Court in the following forms. The relief Plaintiff seeks include asking the court to issue a Temporary Restraining Order, a Preliminary and Permanent Injunction, staying the implementation of the County of Tulare's Policy as it applies to the Plaintiff and other workers in the schools of Tulare.

97. Furthermore, Plaintiff seeks a Declaratory Judgment from the Court stating that the policy of the County Tulare as implemented through its agents is Unconstitutional because it violates the Fourth Amendment of the Constitution.

98.  Plaintiff seeks restitution for the losses she sustained because of this policy, attorney's fees and litigation expenses.

99.  Should the court find the above relief inappropriate, Plaintiff demands a jury trial on the issue of damages and seek all forms of compensatory damages, punitive damages, attorney's fees, and litigation expenses from each of the defendants.

## THIRD CLAIM FOR RELIEF: VIOLATIONS OF
## THE 5th AND 14th AMENDMENTS

### A.  Basis for Jurisdiction

100. Plaintiff incorporates by reference the same jurisdictional grounds as cited in Claims 1-2, above, since the alleged grounds are identical, to wit: Article III, Section 2 of the U.S. Constitution, codified at 28 U.S.C. § 1331.

101. The federal question for this count arises under the 5th Amendment's due process clause, as incorporated to the states via the 14th amendment due process clause; guarantees that no person shall "be deprived of life, liberty, or property, without due process of law." — U.S. Constitution, Amendment V.

102. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. — U.S. Constitution Amendment XIV § 1

103. Since all of these claims are based on the United States Constitution, this court has the ability to hear these claims and exercise federal question jurisdiction over them.

104. Specifically, as elaborated below, the TCSD's injection policy deprives Plaintiff of her 5th Amendment rights by mandating one of three options: 1) submit to injection, which compels a physical intrusion of a needle beneath Plaintiff's skin to containing an experimental mRNA medical treatment AND waive her rights to seek redress in the courts for any injuries or complications therefrom via a signed waiver, termed a "consent form"; 2) submit to invasive testing in violation of her 4th Amendment rights and federal/state privacy rights; or 3) refuse both Option 1 and 2 and be terminated from employment without further process.

105. By enacting a policy that presents Plaintiff with only three alternatives, all of which deprive her of a substantial constitutional right, the County and TCSD is violating Plaintiff's right to due process, under the 5th & 14 Amendments which, therefore, presents a federal question.

**B. Facts in Support of Claim**

106. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." — U.S. Constitution, Amendment V.

107. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." — U.S. Constitution Amendment XIV § 1

108. As stated above, the County of Tulare and its agents are a state actors and the 14th amendment applies directly to the state actors.

109. Specifically relating to the state deprivation of Plaintiff's "property interests" , TCSD is forcing anyone who has not complied to test without compensation as citied in the MOU.

110. TCSD's policy limits Plaintiff's choices to one of three options: 1) submit to injection with medical treatment still 2) submit to invasive testing in violation of her 4th Amendment rights and federal/state privacy rights; 3) refuse both 1 and 2 and be terminated from employment. Options 1 and 3 both violate Plaintiff's 5th and 14th Amendment rights.

111. Further, by submitting to the injection in Option 1, Plaintiff would be forced to sign a "Covid-19 Consent Form." Across the nation, all individuals submitting to injection must first sign "consent form" containing nearly verbatim language.

112. The "Covid-19 Consent Form" references the EULA, which, whether it is understood or not, documents the signor's acknowledgement that the vaccine they are about to receive requires them to waive their rights to sue for injuries they may sustain by submitting to the injection.

113. The consent form is a requirement for injection. TCSD's policy does not mention the form, and specifies no procedure allowing for injection without first signing the consent form, thus the policy effectively requires signing of the Consent Form to receive injection.

114. Plaintiff, therefore, would be deprived, without due process, of rights to seek recovery in the courts in the event of injury from the TCSD-required injection. Requiring her to waive these rights that would otherwise exist is therefore a violation of the 5th and 14th Amendments.

115. Option 3,  more straightforwardly, deprives Plaintiff of her 5th and 14th Amendment due process rights by termination of employment without due process, in as much as TCSD's policy provides no alternatives besides a false choice between unconstitutional options.


3. *Equal Protection Violations*


116. The Equal Protection Clause prevents discrimination by government of all citizens in the United States regardless of who is doing it.  This includes protections of all of the rights not specifically enumerated in the constitution, such as common law remedies and contractual rights.

117. The policy of the TCSD, classifies employees, including Plaintiff, into two categories, "vaccinated or unvaccinated".

118. The actions taken by the school district against the Plaintiff's "noncomplaince" with TCSD testing and proof of vaccination policy creates the inference that they intend to discriminate against the category of people classified as "unvaccinated"

119. Even if the classification of a person based on their medical history is not a suspect classification, the arbitrary standards as they apply under the policy seem to have no rational relation to any *legitimate* interest, much less a government one.

**C. Relief Sought**

120. Plaintiff is alleging that she suffered "actual injury" caused by the defendants and their agents.  The forms of injury Plaintiff has suffered include lost wages and removal from the positions where they worked tireless throughout the pandemic and before.  Some examples include lost salary, medical and health benefits, pensions, retirement and civil service benefits.

121. For this count, Plaintiff is seeking relief in equity from the Court in the following forms: The relief Plaintiff seeks include asking the court to issue a Temporary Restraining Order.

122. Issuing a Preliminary and Permanent Injunction, staying the implementation of the County of Tulare's Policies as they apply to the Plaintiff and other workers in the schools of Tulare.

123. Plaintiff seeks a Declaratory Judgement from the Court stating that the policies of the TCSD and Tulare County is Unconstitutional because it violates both the Due Process Clause of the 5th and 14th Amendment of the Constitution.

124. Plaintiff also seeks an additional declaratory judgment that the policy of TCSD is in violation of the Equal Protection Clause of the 14th amendment as it has been applied to her because it creates a suspect classification of people based on their medical history.

125. Plaintiff seeks restitution for the losses she sustained because of this policy, attorney's fees and litigation expenses.

126. Should the court find the above relief inappropriate, Plaintiff demands a jury trial on the issue of damages and seek all forms of compensatory damages, punitive damages, attorney's fees, and litigation expenses from each of the defendants.

# FOURTH CLAIM FOR RELIEF: VIOLATIONS OF THE

## CONFIDENTIALITY OF

## MEDICAL INFORMATION ACT

## (CALIFORNIA STATE LAW - SUPPLEMENTAL FEDERAL JURISDICTION)

### A.  Basis for Jurisdiction

127. A district court with jurisdiction over a claim may exercise "supplemental jurisdiction" over additional claims over which the court would not independently have subject matter jurisdiction but that are so related to the original claim that the additional claims form part of the same case or controversy under Article III of the U.S. Constitution. § 1367(a). In judging whether the claims are related, the test is whether they arise out of a "common nucleus of operative fact" such that all claims should be tried together in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

128. Plaintiff is suing TCSD for violations of state law, specifically California Civil Code § 56 et seq. (aka "Confidentiality of Medical Information Act"). Plaintiff concedes that the district court has no independent basis for subject matter jurisdiction over Plaintiff's Confidentiality of Medical Information Act claims.  However, the court may exercise supplemental jurisdiction because all of the facts in regard to each of Plaintiff's federal questions claims are similar to her California law claims.   The implementation of the TCSD's policies challenged herein has raised numerous issues so interrelated that one violation is based upon the other.  Defendants are state actors and the Plaintiff's employers.  Their actions  involving the constitutional challenges involved the disclosure of Plaintiff's medical information.

129. The regulations of the County, TCSD and its agents directly conflicts with the statute passed by the California Legislature because it seeks to create a local regulation which punishes employees for not disclosing vaccination status.  Vaccination status and COVID-19 history are medical information under California law.  The California legislature has defined and codified what medical information is in the Confidentiality of Medical Information Act and Cal. Civ. Code § 56.05(j).   All of the specific issues of fact in both cases would be litigated

twice should the state law claims be filed in California State Court because the facts and the defendants are the same in both cases.

130. Therefore, this Court can properly exercise supplemental jurisdiction over medical information claim.

**B. Facts in Support of this Claim**

131. In order to implement the policies of the TCSD, the school district is requiring every staff member to fill out a form which states that individual employees is either vaccinated or unvaccinated.

132. As stated above, Plaintiff was notified by Marroquin via email to log onto the TCSD portal and fill out a form which asked her to either show proof of vaccination or to submit to nasal swab testing prior to coming into school.

133. The portal is online and requires employees check one box if "you are vaccinated or the other if you are not."

134. After implementation of the specific policy by TCSD, each individual teacher who did not submit proof of COVID-19 vaccination status was required, in order to keep their employment, to stand in line and submit to PCR testing weekly, with the results disclosed to the County.

135. The September 28, 2021 policy gave this authority to the school nurses in TCSD.

136. In October of 2021, Plaintiff was approached by Ira Porchia, an employee for Tulare City School district; asking Plaintiff for her medical information regarding her COVID-19 vaccination status and COVID-19 testing history.

137. Plaintiff refused multiple times to disclose any portion of her medical history even after threats from Porchia that she will lose her job, citing the new county policy for workers and unilateral contractual amendments without consideration.

138. Plaintiff was told at a meeting by the assistant superintendent to her school district; Defendant Pierschbacher, that if she refused to comply with the testing and medical disclosures, she would be placed on unpaid administrative leave and would be terminated.

139. Plaintiff has continued to refuse to submit either to testing or submitting proof of vaccination.

140. Everything the TCSD policy seeks to obtain is medical information and is protected by the California Civil Code § 56 et seq.,

141. California Civil Code § 56.20 provides that no employee can be mandated by their employer to disclose their medical history at random or in an attempt to renegotiate the terms and conditions of their employment.

142. It also imposes a duty on employers who receives medical information to establish appropriate procedures to ensure the confidentiality and protection from unauthorized use and disclosure of that information. These procedures may include, but are not limited to, instruction regarding confidentiality of employees and agents handling files containing medical information, and security systems restricting access to files containing medical information.

143. The medical disclosure authorization form must be in strict compliance with Cal. Civ. Code § 56.21 for it to be valid, which is so specific, it even includes font size of the type.

144. Discrimination for any employees refusal to sign an employer's medical authorization form creates a tort which a person or employer can be sued for damages or in equity.

145. Also known as the "Confidentiality of Medical Information Act," § 56 et seq. was passed in California during the HIV/AIDS pandemic in the 1980s in order to protect citizens from moral panic overreaching contractual obligations and workers rights, and supersedes any regulation or regulatory authority delegated to the school board or the County Board of Supervisors.

//
//
//

**C. Relief Sought**

146. Plaintiff is alleging that she suffered "actual injury" caused by the defendants and their agents.  The forms of this injury include lost wages and removal from the positions where they worked tirelessly throughout the pandemic and before.

147. *California Civil Code § 56.35* Compensatory and punitive damages; attorneys' fees and costs "In addition to any other remedies available at law, a patient whose medical information has been used or disclosed in violation of Section 56.10 or 56.104 or 56.20 or subdivision (a) of Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation.

148. Based on the wording of this statute, Plaintiff is entitled to and is seeking any and all compensatory damages which includes lost salary, benefits, pensions, retirement and civil service benefits.

149. In this case, Plaintiff demands a jury trial on the issue of damages and seeks payment of attorneys' fees, and litigation expenses as allowed under the Confidentiality of Medical Information Act.

150. The *California Civil Code § 56.35* is all encompassing, and does not limit Plaintiff to relief specifically in the four forms cited above.  The wording of the statute also includes any other remedies at law which can be granted by the court which the Plaintiff asks for in the following forms specifically: A Temporary Restraining Order, A Preliminary and Permanent Injunction and Declaratory Judgement.

151. This court has the discretion to grant these remedies under the all encompassing provision.

152. Specifically relating to the Temporary Restraining Order, in this particular case, the TRO is warranted because Plaintiff is going to be returning to work the week of January 10, 2022, and she is expecting her employer to send her home for refusing to comply with the mandatory medical disclosure policy.

153. The reason Plaintiff is seeking a Temporary Restraining Order is to prevent the school district from punishing her for exercising her right to refuse the authorization of disclosure under the confidentiality of medical information act.  Other workers in a similar situation have been placed on permanent unpaid leave for refusing to disclose their medical information and it logically follows that Plaintiff will be in a similar situation if the TRO is not granted and she shows up to work on Monday.

154. The Plaintiff is requesting that the court grant the TRO ex parte, so that she can show up to work protected and free from discrimination and persecution, a least until the preliminary injunction hearing takes place.

155. The Plaintiff is asking the court to specifically issue an order preventing the county from removing her from work, harassing her or discriminating her and mandating her to divulge her medical information which she has fought tireless to protect.

156. The Plaintiff also seeks an order for a preliminary and permanent injunction, preventing the county from forcing the disclosure of her medical information or terminating or discriminated against her for her failure to disclose.

157. The Plaintiff seeks declaratory relief that the regulations of TCSD and Tulare County because they are in violation of the Supremacy Clause of the Constitution since they directly conflict with the text of California Civil Code § 56 et. al seq. and the California Constitution's right to privacy.

158. In addition to the equitable remedies requested, the California Civil Code § 56.35 allows for a plaintiff to collect additional monetary damages in the form of compensatory damages, punitive damages, attorney's fees and litigation expenses from any defendant who is jointly and severally liable.

159. Plaintiff has been out of work since the implementation of this policy, on leave due to stress caused by the discrimination from her employer. She is seeking general damages for pain and suffering due to the stress and special damages as they relate to her lost pay and benefits.  Over the last three months, Plaintiff accrued actual money loss in the form of lost disability time and sick leave, along with costs of medical expenses to see her doctor.

160. The amount of actual money damages is greater than twenty dollars as required by the 7th amendment so she is entitled to a jury trial on the issue of damages.

## V.  **PRAYER FOR DAMAGES & RELEIF**

1. "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." — U.S. Constitution, Amendment VII

2. This Court has the authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(a) and damages under the 7th Amendment to the Constitution and the appropriate California Civil Codes as stated above.

3. Plaintiff is asking the court for relief both in law and in equity as specified above as it relates to each individual count which make up the basis of this complaint and any other relief the court deems appropriate. The Plaintiff has an individual right to a trial by jury under the 7th Amendment and seeks to preserve this right by making a *demand for a jury* trial on each individual claim or issue where the relief sought is damages in excess of twenty dollars.

Respectfully Submitted,

_____
Howard Williams
Attorney at Law