Howard L. Williams
State Bar Number: #207242
910 Court St,
Martinez, CA 94553-1731
925-257-2946
howardwilliams@icloud.com
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| Guida Maria Dennis, | ) Case No. 1:22-cv-00045-JLT-BAM |
| Plaintiff, | ) |
| vs. | ) |
| Jennifer Marroquin, | ) Plaintiff's Application for Temporary Restraining Order |
| Phillip Pierschbacher, | ) |
| Ira Porchia, | ) |
| Cherry Ave Middle School, | ) |
| Tulare City School District, | ) |
| County of Tulare, | ) |
| & | ) |
| Does 1-100 | ) |
| Defendants, | ) |

Plaintiff Guida Dennis hereby applies to the Court pursuant to Federal Rule of Civil Procedure 65 and Local Rule 231, for a Temporary Restraining Order enjoining Defendants from disciplining or terminating Plaintiff for noncompliance with their COVID-19 vaccination/testing Policy [discussed herein and in the Complaint filed herewith].

This application is made on the grounds set forth in the accompanying Memorandum in Support; the exhibits attached thereto; all pleadings and papers filed in this action; the argument of

1  counsel; and further evidence as the Court may consider at or before a hearing regarding this

2  Application requested herein.

3  Dated: January 11, 2022

4

5  By:

6          Howard L. Williams, Attorney for Plaintiff Guida Dennis

7

8  I.      **<u>Applicable Law</u>**

9         A temporary restraining order (TRO) preserves the status quo of the parties until there is an

10  opportunity to hold a full hearing on the application for a preliminary injunction. This interlocutory

11  injunction may remain in effect only a limited number of days, to be set by the court, and no longer

12  than 14 days unless good cause exists or the adversary consents. Rule 65(b)(2).  A motion for a TRO

13  or preliminary injunction requires the Court to make four findings with respect to the moving party:

14  that "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence

15  of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the

16  public interest." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing

17  W*inter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

18

19                 **FACTUAL BACKGROUND**

20        <u>Note on the Specific Language of the Unconstitutional Policy Challenged Herein</u>

21         The motion for Temporary Restraining Order and accompanying Complaint both challenge a

22  local policy ("the Policy") being executed by certain state actors, to include the named Defendants

23  and Doe Defendants. While we know for certain, based on Plaintiff's experience and facts alleged

24  herein, that the local policy is being exercised in violation of Plaintiff's constitutional rights, we are

25  unable to cite the exact wording of that local policy. The reason is that the local policy, which

26  appears to be a School Board Resolution of the Tulare City School District, is not published with

27  the minutes of the School Board meeting where all other resolutions are published in the normal

28  course. However, it appears that the Policy is "Memorandum of Understanding between TCTA and

1   TCSD, 2021/2022 - Independent Study; Testing of Unvaccinated Staff", approved by the TCSD

2   School Board on on September 28, 2021. The language of that Memorandum of Understanding

3   ("MOU") simply states that all "nonvacinated" employees must submit to testing at the school

4   nurses at various job sites. [Attached hereto as **Exhibit B**]. The MOU provides further detail as to

5   how they will obtain the information of who is and isn't "vaccinated" nor does it provide adequate

6   assurances that the compliant employee's medical results will be protected.  The langue of the MOU

7   regarding COVID-19 policy is very broad in its scope (see Complaint filed herewith) and appears to

8   give broad discretion to the individual job sites.

9        Numerous employees named herein reference the Policy in their communications with

10  Plaintiff, and otherwise cite it as the color of law under which they are acting. For example, Exhibit

11  A attached hereto is a flier, dated September 1, 2021, summarizing the School District's policy,

12  entitled "Tulare City School District; Vaccine Verification & Staff Testing Timeline." That flier

13  summarizes what appear to be the "marching orders" that Defendants are following in their actions

14  against Plaintiff and outlines the relevant portions of the Policy that form the basis for Plaintiff's

15  constitutional challenge.

16       We anticipate acquiring the verbatim language of the Policy that we are challenging in the

17  near future, via discovery, or a public document request. In the meantime, however, the existence of

18  the Policy is clear, as is the unconstitutional manner in which it is being applied against Plaintiff by

19  Defendants, as discussed in-depth herein.

20                       <u>**Timeline of Relevant Facts**</u>

21  **1.**  At all relevant times herein, Plaintiff was employed as a Bilingual Aide at Cherry Ave Middle

22       School, which is a member school in the Tulare City School District.

23  **2.**  On September 28, 2021, Tulare City School District held a board meeting at which

24       "Memorandum of Understanding Between TCTA and TCSD, 2021-2022 - Independent Study;

25       Testing of Unvaccinated Staff" was approved. According to the Board Minutes, attached hereto

26       as **Exhibit B,** the MOU was approved unanimously as presented, although no guidance of how

27       the individual job sites are going implement this policy nor do they explain punishment for

28       noncompliance.

3.  Plaintiff was given, via email, a copy of the document attached hereto as **Exhibit A**, "Tulare City School District; Vaccine Verification & Staff Testing Timeline," which indicates that all employees must be vaccinated, or, if not vaccinated, "must undergo diagnostic testing at least once weekly" and setting a compliance date of October 15, 2021 for this policy.

4.  On September 23, 2021, Jennifer Marroquin, who holds the title of "Covid-19 Learning Loss Mitigation/Early Childhood Director" notified Plaintiff and requested that Plaintiff complete the "Vaccination Verification Form" on a district website, further instructing her to check one of two boxes, indicating that Plaintiff is either vaccinated or not vaccinated. See, Plaintiff's Affidavit, ("Affidavit") attached hereto, ¶ 3;

5.  On September 24, 2021, Plaintiff informed Marroquin that Plaintiff intended to submit a religious exemption to the vaccination and testing requirement and also objecting to any disclosure of Plaintiff's medical information via COVID testing. Affidavit ¶ 4

6.  On October 12, 2021, Plaintiff expressed that she was opposed to both invasive vaccination and invasive testing to School District employee Ira Porchia; Porchia indicated that if Plaintiff were to refuse both vaccination and testing, she would receive "progressive discipline" that would ultimately result in her termination if she continued to refuse. Affidavit ¶ 10

7.  On October 13, 2021, Plaintiff indicated that, as a compromise, she would consider submitting to a non-invasive "spit saliva" test and was told by Porchia that this would be an option. Affidavit ¶ 11.

8.  On October 19, 2021, Marroquin contacted Plaintiff and indicated that non-invasive "spit saliva" testing was NOT actually an option and that, instead, Plaintiff must sign up for testing on the next Thursday or Friday. Affidavit ¶ 15

9.  Feeling pressured under the threat of termination, Plaintiff signed up for invasive testing on October 22, 2021, however did not show up for testing at that designated time; Marroquin emailed Plaintiff that same day, indicating that Plaintiff must undergo an invasive test at a third-party provider in order to return to work. Affidavit ¶¶ 16-18.

10. Rather than submit to vaccination or invasive testing, and under stress from the pressure and harassment by School District employees, Plaintiff requested "stress leave" and was given a

return-to-work date of December 20, 2021, a date that fell during Winter Break. Affidavit ¶¶ 20-24.

**11.** Cherry Avenue Middle School reopens from Winter Break on January 10, 2022, Affidavit ¶ 25, and Plaintiff intends to return to work on January 11, 2022.

**12.** On January 6, 2022, Plaintiff received an email from Marroquin indicating that to return to work, Plaintiff must complete a series of forms agreeing to test (and waive her rights to privacy of medical information) or be prevented from returning to work. Affidavit ¶ 26. [Attached hereto as **Exhibit C**]

**13.** October 20, 2021 Plaintiff presented a letter for religious exemption to Mr. Pierschbacher from a pastor and one from herself. (See **Exhibit D**)

**14.** October 20, 2021, Plaintiff was sent a letter by Mr. Pierschbacher, which stated "The state is requiring all school districts to test employees who are not vaccinated for COVID-19 or refuse to state their status.  I explained to you that you do not have a choice whether or not to test.  If you choose not to test … [you will go] on unpaid leave (after using all available leave-personal necessity, vacation and/or comp time). (See **Exhibit E**)

## POINTS, AUTHORITIES, AND ARGUMENT

(a) <u>**Plaintiff's claim is likely to succeed on the merits**</u>

Plaintiff is making several claims, all of which are likely to succeed on the merits. Plaintiff's first amendment challenges are likely to succeed under the following Supreme Court line of precedents.  The First Amendment to the United States Constitution provides that, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Both the Establishment Clause and the Free Exercise Clause have been incorporated into the Due Process Clause of the Fourteenth Amendment and are therefore applicable to the states.  When a governmental program shows preference to one religion over another, or to religion over non religion, strict scrutiny applies. *Bd. of Educ. v. Grumet*, 512 U.S. 687 (1994) (creation of special

1  school district to benefit members of one religion invalid); *Larkin v. Grendel's Den, Inc.*, 459 U.S.

2  116 (1982) (delegating or sharing ability to make discretionary decisions, like zoning decisions, to a

3  religious institution invalid).  The United States Supreme Court has taken this to mean that, "A

4  proper respect for both the Free Exercise and the Establishment Clauses compels the State to pursue

5  a course of 'neutrality' toward religion," *Committee for Public Ed. & Religious Liberty v. Nyquist,*

6  413 U.S. 756, 792–793, (1973), favoring neither one religion over others nor religious adherents

7  collectively over nonadherents. See *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968).  *Board of Educ.*

8  *of Kiryas Joel Village School Dist. v. Grumet* 512 U.S. 687, 696 (1994).

9        The policy that Plaintiff seeks to challenge is a set of rules currently being implemented by

10  employees of the Tulare City School District (hereinafter "TCSD"), which requires employees to

11  choose between injection with "a COVID-19 vaccination from either Pfizer, Johnson and Johnson

12  or Moderna," or face termination of their employment (hereinafter "the Policy"). Alternatively,

13  employees can choose Covid testing, which requires invasion of a bodily orifice with a swab.

14        Each of these different companies which manufacture this procedure includes fetal cells in

15  the testing and Johnson and Johnson includes fetal cells in the final dosage[1].  For Plaintiff, the

16  regulation is requiring her plaintiff to inject into her body a fetal cell line-derived mRNA formula,

17  despite it pointedly conflicting with her religious beliefs.  The Policy requires educational staff to

18  submit proof of "COVID-19" vaccination, along with the a submitted religious or medical

19  exemption form.  Plaintiff objects to the Policy, in part because she holds religious beliefs and

20  values that preclude use of fetal cells, and informed Pierschbacher of her objections via letter on

21  October 22, 2021. (See **Exhibit F**, attached hereto)

22        Under the Free Exercise Clause, a law that burdens religious practice must be justified by a

23  compelling governmental interest and must be narrowly tailored to advance that interest. Through

24  the Fourteenth Amendment Due Process Clause, the First Amendment has been applied to the

25  various states (see *Cantwell v. Connecticut*, (1940)  310 U.S. 296, 303).  This means that local and

26  state governments are bound to honor the protections that the first amendment affords. Furthermore,

27

28  [1] See, e.g. e.g. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8205255/; See also, John Does 1-3 et al. v. Janet T. Mills, Governor of Maine, et al.; Gorsuch dissent [State of Maine does not dispute fetal cell line claims made by Plaintiff asserting a free exercise challenge to mandatory vaccination].

1   under the Free Exercise Clause line of Supreme Court jurisprudence, a law fails to qualify as

2   generally applicable, and thus triggers strict scrutiny, if it creates a mechanism for "individualized

3   exemptions." (See *Lukumi*, 508 U. S., at 537; see also *Fulton v. Philadelphia*, 593 U. S. (2021) (slip

4   op., at 5–6).)

5          Furthermore, the Policy empowers government employees to judge the validity of the

6   Plaintiff's sincerely held religious beliefs.  This law triggers strict scrutiny and is presumptively

7   invalid; therefore Plaintiff will likely succeed on the merits of this claim.

8          Additionally, Plaintiff's claims based on independent state law grounds for violations of the

9   Confidentiality of Medical Information act is also likely to succeed on the merits for other reasons,

10  discussed below.

11         *Violations of California Medical Privacy Law (via Supplemental Federal Jurisdiction)*

12         The California legislature sought to protect every California citizen's right to privacy by

13  enacting legislation creating a tort under which a defendant can be sued for damages.  Specifically,

14  California prohibited employers from punishing their employees for failing to disclose medical

15  information by passing the Confidentiality of Medical Information Act, codified in *California Civil*

16  *Code* § 56.20 et seq. Plaintiff is alleging that defendant and its agents violated that section when

17  they required all of their employees in the Tulare Unified School District to submit their medical

18  information under threat of termination.   The implementation of this policy against Plaintiff,

19  therefore, violates of the Confidentiality of Medical Information Act under California Law since it

20  does not provide proper means for disclosures and terminates employees for refusal to disclose.

21         The applicable code section Plaintiff is suing under reads as follows: "No employee shall be

22  discriminated against in terms or conditions of employment due to that employee's refusal to sign an

23  authorization under this part."  Cal.Civ.Code § 56.20(b). Based on § 56.20, TCSD was required by

24  statute to follow the parameters set forth in Cal. Civ. Code § 56.21 (West Supp. 2021) when it

25  attempted to obtain Plaintiff's medical information.  Any disclosure of medical information which

26  does not comply with the procedures set forth under Cal. Civ. Code § 56.21 (West Supp. 2021) is

27  not valid nor does it protect and/or shield an employer from punishment under this civil code

28

1   section.  Plaintiff is alleging that she never signed any document which comports to the

2   requirements of Cal. Civ. Code § 56.21.

3          Plaintiff is further alleging that she was discriminated against by all named Defendants when

4   they attempted to force her to submit to testing, which includes disclosure of her medical

5   information.  "An employer 'discriminates' against an employee in violation of section 56.20,

6   subdivision (b) if it improperly retaliates against or penalizes an employee for refusing to authorize

7   the employee's health care provider to disclose confidential medical information to the employer or

8   others…." *Kao v. USF* (2014) 229 Cal.App.4th 437, 454; (citing *Loder v. City of Glendale* (1997)

9   14 Cal.4th 846, 861).

10         Plaintiff herein alleges that at no point during her employment with TCSD did her employer

11  ever attempt to comply with the proper procedures in order obtain her medical information.   The

12  "pick one or the other" (see complaint) internet vaccination verification form is not in compliance

13  with Cal. Civ. Code. § 56.21, which governs the procedures required for an employer to validly

14  receive medical disclosures.  § 56.21 is so specific that it creates a statutory element for font size.

15  Among other things, § 56.21 requires that the authorization of employers to receive medical

16  disclosures is clear and concise, and what the scope of the authorization entails.  For the

17  authorization to validly shield employers from liability, it must also be signed by the employer or a

18  statutorily enumerated representative. Plaintiff never signed any authorization by her employer and

19  declined to provide authorization for her employer or their agents to obtain her medical information

20  in writing multiple times. (See Complaint)

21         Plaintiff was personally contacted by Mr. Pierschbacher, the Assistant Superintendent of the

22  school district which Plaintiff worked.  He told her specifically that if she failed to comply, she

23  would be removed from work, placed on unpaid leave, and terminated after a vote from the board.

24  To this point, those threats have not been carried out, although for the last few weeks Plaintiff has

25  not been required to come to work because of the holiday school closures.  However, based on the

26  prior threats from Pierschbacher, Plaintiff anticipates that the threats will be carried out should she

27  appear at work on Monday January 10, 2022.   Based on the prior conduct and statements of County

28

1    employees, Plaintiff can prove all the required elements under California Civil Code § 56.20 and

2    therefore is likely to succeed on the specific issue of liability.  (See Complaint)

3        Furthermore, under the definition put forth by the legislature in the Confidentiality of

4    Medical Information Act, Medical information is defined under Cal. Civ. Code § 56.05(j) (West

5    Supp. 2021) as any individually identifiable information, in electronic or physical form, in

6    possession of or derived from a provider of health care, health care service plan, pharmaceutical

7    company, or contractor regarding a patient's medical history, mental or physical condition, or

8    treatment. "Individually identifiable" means that the medical information includes or contains any

9    element of personal identifying information sufficient to allow identification of the individual, such

10    as the patient's name, address, electronic mail address, telephone number, or social security number,

11    or other information that, alone or in combination with other publicly available information, reveals

12    the individual's identity. (See Complaint).

13        Based on the definition put forth by the California legislature, all Covid-19 PCR testing,

14    results, personal vaccination history and any other relevant information regarding COVID-19 is

15    "medical information" under California law.  The information which the County of Tulare sought to

16    obtain from plaintiff is medical information under the statute.  Additionally, the statute itself broadly

17    defines individually identifiable and all of the information sought by Plaintiff's employer was well

18    within the scope of the statute.

19        "No employer shall use, disclose, or knowingly permit its employees or agents to use or

20    disclose medical information which the employer possesses pertaining to its employees without the

21    patient having first signed an authorization under Section 56.11 or Section 56.21 permitting such

22    use or disclosure" Cal. Civ. Code § 56.20 (West Supp. 2021).  The policy of TCSD from September

23    28, 2021 where the district board members allowed the nursing staff at the job site to perform these

24    procedures on employees raises serious privacy concerns. (See Complaint).  Though Plaintiff's

25    personal claim can independently succeed on the merits, there is strong likelihood that the district is

26    violation other portions of Civ. Code § 56.  For instance, at Plaintiff's job site, the administration

27    requires everyone in Plaintiff's classification to line up in the office and get tested for COVID in

28    front of everyone prior to being able to perform their duties.  There is no confidentiality nor is this a

1  permissible use of all of the employees who work for the county of Tulare's medical information

2  and thus due to the nature of both claims, Plaintiff (and all other employees) are likely to succeed on

3  the merits.

4         As the testing policy of TCSD is applied to the plaintiff, Plaintiff asks the court to issue a

5  Temporary Restraining Order, staying the implementation of the County of Tulare's Policy as it

6  applies to the Plaintiff.  Plaintiff also asks the court for an order granting a TRO as it applies to the

7  entire TCSD from implementing this policy as it requires testing and disclosures to be done at the

8  job site by school nurses without compensation or consideration.  At Plaintiff's job site, the applied

9  practice of this policy results in the negligent disclosure of other workers testing history.

10        Plaintiff seeks an order in the TRO preventing the testing from apply to her and all the staff

11  of TCSD under alternative legal theories, each of which will be likely be successful on the merits.

12  Should the Court find one theory likely to have less success that the other, Plaintiff asks the court to

13  issue the relief from the policy as it applies to her specifically.

14        *California Civil Code § 56.35* Compensatory and punitive damages; attorneys' fees and

15  costs "In addition to any other remedies available at law, a patient whose medical information has

16  been used or disclosed in violation of Section 56.10 or 56.104 or 56.20 or subdivision (a) of Section

17  56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory

18  damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to

19  exceed one thousand dollars ($1,000), and the costs of litigation.

20        The *California Civil Code § 56.35* is all encompassing, and does not limit Plaintiff to relief

21  specifically in the four forms cited above.  The wording of the statute also includes any other

22  remedies at law which can be granted by the court which the Plaintiff asks for in the following

23  forms specifically: A Temporary Restraining Order, A Preliminary and Permanent Injunction and

24  Declaratory Judgement.  This court has the discretion to grant these remedies under the all

25  encompassing provision.

26        Specifically relating to the Temporary Restraining Order, in this particular case, the TRO is

27  warranted, as Plaintiff plans to return to work the week of January 10, 2022,  is expecting her

28  employer to carry out prior threats and send her home for refusing to comply with the mandatory

1   medical disclosure policy.  The reason Plaintiff is seeking a Temporary Restraining Order is to

2   prevent the school district from punishing her for exercising her right to refuse the authorization of

3   disclosure under the confidentiality of medical information act.

4          The Plaintiff is requesting that the court grant the TRO *ex parte*, so that she may return to

5   work protected and free from discrimination and persecution until such time as the preliminary

6   injunction hearing can occur.  Plaintiff is asking the court to specifically issue an order preventing

7   the county from removing her from work, harassing her or discriminating against her and/or

8   mandating her to divulge her medical information.

9      **(b) Plaintiff is likely to suffer irreparable harm in the absence of preliminary Injunctive**

10         **Relief**

11         Plaintiff plans to return to work during the week of January 10, 2022, and is concerned that

12   the County, as her employer, will carry out prior threats and impose consequences for refusing to

13   comply with their mandatory medical disclosure policy. According to their prior threats, these

14   consequences could include sending Plaintiff home from work and placing her on unpaid leave,

15   which would cause her to include damages in the form of lost wages that result in consequential

16   damages to her personal finances. Further, again according to the County's own prior threats, the

17   County may initiate termination proceedings against Plaintiff, depriving her, without legal

18   justification, of her job, in which she has worked for years to build a professional reputation and

19   rapport with her students and colleagues, not to mention the obvious impact of sudden

20   unemployment on her life.

21     **(c) The Balancing of Equities in the Matter Heavily Favors Plaintiff**

22         Balancing the equities on both sides of this matter,  Court must consider the Plaintiff's

23   situation, which is that she is being threatened with "progressive discipline" leading to termination,

24   simply because of her religious beliefs and desire to assert her rights to privacy of her medical

25   information. If temporary injunctive relief is not granted, the TCSD has made it clear that it intends

26   to initiated disciplinary proceedings against Plaintiff, (See Affidavit & Complaint) which will cause

27   Plaintiff's damages surrounding loss of wages and employment to begin to accrue. On the other

28   side, the District will likely argue that its policy is simply an effort to keep everyone safe, yet will

1  not be able to justify how this particular policy accomplishes that goal, nor why there is not an

2  alternative that accomplishes that goal without violating the constitutional rights of its employees.

3         Plaintiff asks this court to issue this order *ex parte*, do is to specifically issue an order

4  preventing the county from executing the Policy that will result in terminating Plaintiff's

5  employment for no other reason than Plaintiff's failure to follow the directives of the Policy, which

6  require her to choose between alternatives, all of which violate her rights, i.e. submit to injection

7  with an experimental medical treatment involving fetal cells in violation of her first amendment

8  rights, or submit to testing that similarly violates her constitutional rights and also

9  unconstitutionally places her in a class of "unvaccinated" individuals treated discriminatorily under

10 the Policy, and, simultaneously, requires her to forgo her rights to medical privacy.

11        **(d)  An Injunction is In the Public Interest**

12        Enjoining the County from carrying out consequences against Plaintiff is in the public

13 interest, as, we are informed and believe, there are other county workers, similarly situated, who

14 may either suffer the same consequences or, under threat of those consequences, feel forced forgo

15 their legal rights against their better judgment. Granting this relief in favor of Plaintiff will serve the

16 public's interest by staying the County's execution of consequences against similarly situated

17 employees until such time as the legality of the County's policy and act can be reviewed by this

18 Court.

19 **II. Conclusion**

20        For the reasons set forth above, Plaintiff respectfully requests that this Court issue a

21 temporary restraining order enjoining Defendants from enforcement of their local COVID-19

22 vaccination/testing Policy against Plaintiff, until the issues underlying the constitutionality of such

23 policy have been litigated.

24

25 Respectfully Submitted,

26

27 Howard L. Williams

28 Attorney for Guida Dennis

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**TEMPORARY RESTRAINING ORDER**
**(TRO)**
**CHECKLIST**

**NOTE:**     When filing a Motion for a TRO with the court, you must choose Motion for TRO.  You must complete this document and attach it to your motion as an attachment in CM/ECF.  If you have questions, please call the CM/ECF Help Desk at 1-866-884-5525 (Sacramento) or 1-866-884-5444 (Fresno).

(A)     *Check one.*     Filing party is represented by counsel          ☐

                        Filing party is acting in pro se               ☐


(B)     Has there been actual notice, or a sufficient showing of efforts to provide notice to the affected party? *See Local Rule 231 and FRCP 65(b).*




        Did applicant discuss alternatives to a TRO hearing?




        Did applicant ask opponent to stipulate to a TRO?




        Opposing Party:

        Telephone No.:




(C)     Has there been undue delay in bringing a TRO?




        Could this have been brought earlier?

                Yes:     ☐          No:     ☐

(D)     What is the irreparable injury?



        Why the need for an expedited hearing?



(E)     Documents to be filed and (unless impossible) served on affected parties/counsel:

☐     (1)     Complaint

☐     (2)     Motion for TRO

☐     (3)     Brief on all legal issued presented by the motion

☐     (4)     Affidavit detailing notice, or efforts to effect notice, or showing why it should not be given

☐     (5)     Affidavit in support of existence of irreparable harm

☐     (6)     Proposed order with provision for bond

☐     (7)     Proposed order with blanks for fixing:

              ☐     Time and date of hearing for motion for preliminary injunction

              ☐     Date for filing responsive papers

              ☐     Amount of bond, if any

              ☐     Date and hour of issuance

☐     (8)     For TROs requested *ex parte*, proposed order shall notify affected parties they can apply to the court for modification/dissolution on 2 days notice or such shorter notice as the court may allow. *See Local Rule 231 and FRCP 65(b)*